# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE JACINTO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:12-cv-01394-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER DEVELOPMENT OF THE RECORD |

　　　Plaintiff Jose Jacinto ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF Nos. 1, 2.) All parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

　　　Plaintiff applied for disability benefits due to his chronic neck and back pain, degenerative disc disease, spinal stenosis and depression. For the reasons set forth below, Plaintiff's appeal from the administrative decision of the Commissioner is granted in part and denied in part and the Court remands this action back to the Commissioner for further administrative proceedings on the issue of whether Plaintiff is capable of performing other work.

/ / /

# I.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for benefits under the Social Security Act on October 15, 2009. (AR 120.) Plaintiff alleged a disability onset date of June 5, 2009. (AR 120.) Plaintiff's application was denied initially on February 11, 2010 (AR 50) and then denied upon reconsideration on July 21, 2010 (AR 56). On August 23, 2010, Plaintiff requested a hearing by an administrative law judge. (AR 63.)

On August 19, 2011, a hearing took place before Administrative Law Judge Patricia Leary Flierl ("the ALJ"). (AR 26.) Plaintiff was represented by an attorney at the hearing. (AR 26.) Jose Chaparro testified at the hearing as a vocational expert ("the VE"). (AR 26.)

On August 25, 2011, the ALJ issued her decision finding Plaintiff to be disabled within the meaning of the Social Security Act. (AR 22-25.) On October 24, 2011, the Appeals Council informed Plaintiff that they would be reversing the ALJ's decision and find Plaintiff to be not disabled. (AR 13-17.) After providing Plaintiff an opportunity to submit additional information, the Appeals Council issued its written decision denying benefits on July 3, 2012. (AR 4-8.)

### A. ALJ Hearing Testimony

Plaintiff was born on January 25, 1954. (AR 29.) Plaintiff graduated high school and attended college for two years. (AR 29.)

Plaintiff last worked in June of 2009. (AR 29.) Plaintiff stated that he stopped working because the shop he worked at, Caliber Collision Center, eliminated his position. (AR 29-30.) Plaintiff looked for work afterwards, but his back started hurting and his doctor (Dr. Mochizuki) told Plaintiff he was disabled. (AR 30.)

Plaintiff was the paint shop manager at Caliber Collision Center. (AR 30.) Plaintiff worked there for 28 years. (AR 30.) For the last fifteen years, Plaintiff was a supervisor. (AR 31-32.) When Plaintiff was working, he was lifting 20-30 pounds on the job. (AR 44.) Plaintiff stated that when his back started hurting, he took more time off work and because he worked at

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 10.)

the shop for 28 years, "they allowed [Plaintiff] the latitude to take some time off...." (AR 39.)

Plaintiff stated that he can no longer work because of pain in his lower back, hips and right leg. (AR 32.) The pain is more severe on some days. (AR 33.) When his back "goes out," Plaintiff is bedridden for about a week and cannot do anything. (AR 33.) His back goes out "about every couple months." (AR 33.)

Plaintiff testified that he can lift ten to fifteen pounds without aggravating his back. (AR 34.) Plaintiff estimated that he can be on his feet for 2.5 hours in an eight hour period. (AR 35.) Plaintiff can sit for an hour or two in an eight hour period. (AR 35.) Plaintiff lies down in the early afternoon for an hour or two to recover. (AR 36.)

Plaintiff has trouble concentrating and his mind tends to wander if a task is too long. (AR 36.) Plaintiff also has anger and anxiety issues. (AR 36.) Plaintiff stated that his anger issues may have contributed to his employer's decision to eliminate his supervisor position. (AR 39.) However, Plaintiff also stated that the employer wanted him to do more painting, but Plaintiff could not do painting full time. (AR 39.)

Plaintiff stated that he does "pretty much nothing" throughout the day. (AR 41.) Plaintiff goes with his wife to babysit their grandchildren and Plaintiff just keeps them company. (AR 41.) Plaintiff cannot clean the house, cook, or perform yard work. (AR 41-42.) Plaintiff does not have any activities outside the home. (AR 42.) Plaintiff reads a lot. (AR 42.)

**B.    VE Testimony at the ALJ Hearing**

The VE testified that Plaintiff's prior work in the paint shop would be classified as an "automobile body repair supervisor" under the Dictionary of Occupational Titles ("DOT"). (AR 44-45.) The VE also determined that Plaintiff worked as a "transportation equipment painter" or "auto body painter." (AR 45.) No hypothetical scenarios were presented to the VE.

**C.    Plaintiff's Medical Record**

Plaintiff's medical records include records from treating physician Dr. William J. Mochizuki, M.D. (AR 203-207, 226-229), a consultative orthopedic evaluation report from examining physician Dr. Fariba Vesali, M.D. (AR 212-215), a medical evaluation from non-treating, non-examining physician Dr. R. Fast, M.D. (AR 216-217), a consultative psychiatric

3

evaluation report from examining psychologist Dr. Gerardine Gauch, Psy.D (AR 230-235), a case analysis from non-treating, non-examining physician Dr. Charles Fracchia, M.D. (AR 236-237), a psychiatric review technique from non-treating, non-examining psychologist Dr. P. Davis, Psy.D (AR 238-251) and other treatment records from various treating physicians. (AR 266-278.)

The relevant portions of Plaintiff's medical records are discussed in more detail below with the Court's analysis.

### D. The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff's date last insured is December 31, 2014;
- Plaintiff has not engaged in substantial gainful activity since June 5, 2009, the alleged onset date;
- Plaintiff has the following severe impairments: chronic neck and back pain, degenerative disc disease, spinal stenosis and depression;
- The severity of Plaintiff's impairments meets the criteria of section 1.04A of 20 C.F.R. Part 404, Subpart P, Appendix 1; and
- Plaintiff has been under a disability as defined in the Social Security Act since June 5, 2009, the alleged onset date of disability.

(AR 22-25.)

### E. The Appeals Council Decision

On October 24, 2011, the Appeals Council reviewed the ALJ's findings and issued a letter informing Plaintiff that they plan to set aside the favorable ALJ decision and issue an unfavorable decision finding Plaintiff to be not disabled because he is capable of performing his past relevant work as an auto paint shop manager. (AR 13-17.)

The Appeals Council determined that the ALJ's finding that Plaintiff met the criteria of Section 1.04A of the Listing of Impairments was not supported by substantial evidence. (AR 14.) The Appeals Council reasoned that Listing 1.04A requires documentation of (1) a disorder of the spine, (2) resulting compromise of the nerve root or spinal court, (3) causing limitation of motion of the spine, motor loss with atrophy and associated muscle weakness or muscle weakness and

sensory or reflex loss, and (4) if there is involvement of the lower back, positive straight-leg raising test in both the sitting and supine positions. (AR 14.) The Appeals Council determined that the record does not contain medical findings necessary to meet requirements (2) through (4). (AR 14.) Further, the ALJ's decision did not address the evidence from the consultative examiner (Dr. Vesali) who opined that Plaintiff did not meet the requirements in Listing 1.04A. (AR 15.)

The Appeals Council next assessed Plaintiff's residual functional capacity ("RFC") and adopted the opinions of the State agency medical consultant, who opined that Plaintiff could perform medium exertion level work. (AR 15.) The Appeals Council noted that there were no significant physical RFC findings from Dr. Mochizuki or Dr. Vesali. (AR 15.) Further, the Appeals Council noted that Plaintiff did not seek significant medical treatment for his back pain beyond taking ibuprofen and wearing a back brace.

The Appeals Council determined that Plaintiff's mental impairments were not significant because a consultative psychological examiner reported that Plaintiff's symptoms were expected to improve in less than twelve months and a state agency psychologist opined that Plaintiff's mental impairments were not severe. (AR 15.)

The Appeals Council also noted that the ALJ did not contain an adequate evaluation of Plaintiff's credibility, having only provided a conclusory statement that Plaintiff was generally credible. (AR 15.) However, the Appeals Council noted that Plaintiff acknowledged in his Disability Report that he could no longer perform the work as an auto painter, but was able to perform less demanding work as an auto paint shop manager. (AR 15.) The Appeals Council also noted that Plaintiff stopped working in this position because the company eliminated the position. (AR 15.) Accordingly, the Appeals Council found Plaintiff's allegations to be not credible. (AR 15.) After considering additional information submitted by Plaintiff, the Appeals Council issued its written decision on July 3, 2012. (AR 4-8.) The grounds set forth in the Appeals Council's written decision is similar to those in its October 24 letter. The Appeals Council further noted that Plaintiff's mental impairments improved after being prescribed Cymbalta (AR 6) and that Plaintiff's daily activities of reading, watching television, visiting with family, traveling independently, following written and spoken instructions, handling stress and

handling changes in routine indicated that his impairments were not as severe as alleged (AR 7.).

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## III.

## DISCUSSION AND ANALYSIS

Plaintiff raises a single argument on appeal: that the Appeals Council failed to articulate clear and convincing reasons to discredit Plaintiff's testimony.

### A.   The Appeals Council Erred in its Adverse Credibility Determination

Plaintiff argues that the Appeals Council failed to cite clear and convincing reasons to discredit Plaintiff. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Plaintiff challenges the Appeals Council's credibility analysis on three grounds. Plaintiff argues that (1) the Appeals Council erred by failing to discuss the seven factors in Social Security Ruling 96-7p, (2) the Appeals Council improperly relied on Plaintiff's ability to perform his past work as grounds to discredit him, and (3) the Appeals Council improperly relied on Plaintiff's reported daily activities as grounds to discredit him. Additionally, Defendant argues that (4) the Appeals Council's adverse credibility determination is supported by Plaintiff's failure to seek medical treatment.

### 1. The Appeals Council's Failure to Discuss the Seven Factors in Social Security Ruling 96-7p is not a Reversible Error

Plaintiff first argues that the Appeals Council "did not consider the location, duration, frequency and intensity of Jose Jacinto's pain; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness and side effects of medications; treatments; and other treatment modalities" as required by Social Security Ruling 96-7p. (Pl.'s Opening Brief 7:18-22.) SSR 96-7p describes seven factors that the ALJ must consider when assessing the credibility of an individual's statements regarding pain or other symptoms. However, SSR 96-7p does not require the ALJ to expressly discuss each factor in its written decision. Accordingly, the failure to expressly discuss all seven factors does not constitute a reversible error. So long as the ALJ offers specific, clear and convincing reasons for rejecting the claimant's testimony supported by substantial evidence, the ALJ's actions are proper. Notably, Plaintiff does not argue that the ALJ refused to accept evidence into the record that was relevant to one of the seven factors.

///

///

2.     Plaintiff's Statements Regarding His Past Work Does Not Support an Adverse Credibility Determination

The Appeals Council noted that "in the Disability Report, the claimant acknowledged that, while he could no longer perform his past relevant work as an auto painter, he could have performed the requirements of his less demanding light past relevant work as an auto paint shop manager but for the fact, for reasons other than the claimant's condition, the company eliminated that position." (AR 6-7.) The implication made by the Appeals Council is that Plaintiff lacked credibility because Plaintiff applied for benefits alleging disability and inability to work, yet admitted he could perform his past relevant work.

The Appeals Council's reasoning is flawed because Plaintiff never expressly stated that he could perform his prior managerial work. Instead, Plaintiff stated that he stopped working because his company eliminated his position. However, Plaintiff also stated that his condition worsened over time (AR 158), suggesting that he may no longer be able to perform the same work. Plaintiff also stated that his company asked Plaintiff to do more painting, which Plaintiff could not do (AR 39), suggesting that part of the reason Plaintiff's position was eliminated was because Plaintiff was not able to perform all the tasks the company expected of him. Finally, Plaintiff testified that his anger issues likely contributed to the elimination of his position. (AR 39.) The record suggests that Plaintiff could not perform the tasks expected of him for his managerial position and he was effectively fired, despite being told that his position was being eliminated.

Moreover, Plaintiff's ability to perform his past work is not a clear and convincing reason to reject Plaintiff's testimony because the record indicates that Plaintiff was given substantial special accommodations. In the same Disability Report, Plaintiff wrote that his employer provided Plaintiff with accommodations such as "allow[ing Plaintiff] to take longer than normal time off due to bed rest" and "promoted [Plaintiff] to a managerial position that eliminated the need to bend, twist and lift." (AR 158.) At the hearing, Plaintiff testified that his back goes out "every couple months" which causes Plaintiff to become bedridden for "[a]bout a week." (AR 33.) Accordingly, the record reflects that Plaintiff's employer provided him with substantial

1  special accommodations.

2  Plaintiff accurately notes that in the context of determining whether a Plaintiff has engaged in substantially gainful activity, the Social Security Administration acknowledges that work performed under special conditions may not necessarily demonstrate that Plaintiff has the ability to perform substantial gainful activity. See 20 C.F.R. § 404.1573(c). Since the record indicates that Plaintiff worked under special conditions, Plaintiff's statement that he was capable of working under those same special conditions does not raise any clear or convincing credibility concerns. Plaintiff's claim that he is unable to work is not inconsistent with a claim that Plaintiff could work when given special accommodations. Therefore, Plaintiff's ability to perform his past managerial work is not a clear and convincing reason to discredit Plaintiff.

3.    Plaintiff's Daily Activities Do Not Support an Adverse Credibility Determination

The Appeals Council also discredited Plaintiff's testimony because Plaintiff "admits to reading and watching television daily, visiting with family daily, traveling independently, following written and spoken instructions very well, handling stress and changes in routine well." (AR 7.) As a general matter, "the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotations and citations omitted).

As discussed in Orn, a claimant's daily activities can form the basis of an adverse credibility determination in two ways. First, the claimant's reported daily activities may contradict his other testimony. Orn, 495 F.3d at 639. Here, Plaintiff's reported activities do not contradict his other testimony.

Second, a claimant's daily activities can form the basis of an adverse credibility determination if they indicate that he engages in "pursuits involving the performance of physical functions that are transferable to a work setting." Id. (internal quotations and citations omitted). When an adverse credibility determination is made on this ground, the Commissioner "must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Id. (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)). The Appeals Council's failure to do so here

constitutes reversible error.

Moreover, it is unlikely that the cited daily activities could support an adverse credibility determination based on transferability to the work setting. "[R]eading [and] watching television ... are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." Id. While, in some circumstances activities such as "visiting with family daily" or "traveling independently" could involve transferable work skills, they do not necessarily involve transferrable skills. In the absence of additional evidence and findings that Plaintiff's family visits and traveling involved the use of transferrable work skills, such reported activities are insufficient to support an adverse credibility determination. Such generic activities fall into the category of "home activities [that] are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Id. (internal quotations and citations omitted). Visiting family and traveling may be more feasible for Plaintiff in situations where his schedule is flexible and such activities can be scheduled and canceled as needed depending on the severity of his condition on any given day. Those same activities may not be feasible in a work setting, where strict adherence to work schedules and consistency in attendance are expected. Accordingly, Plaintiff's daily activities do not constitute a clear and convincing reason to discredit Plaintiff.

### 4. The Appeals Council Did Not Rely On Plaintiff's Alleged Failure to Seek Medical Treatment as a Basis to Discredit His Testimony

Defendant argues that the Appeals Council's adverse credibility determination is supported by Plaintiff's failure to obtain significant medical treatment for his condition. "[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).

Plaintiff argues that the Appeals Council did not cite Plaintiff's failure to seek treatment as a basis to discredit Plaintiff and, therefore, Defendant cannot rely upon this ground on appeal. This Court "may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630 (reviewing court).

As an initial matter, the Court notes that the Appeals Council's analysis of Plaintiff's credibility takes place in a single paragraph and makes no mention of Plaintiff's failure to seek treatment. (AR 6-7.)

The Appeals Council does discuss Plaintiff's failure to seek treatment elsewhere in its decision, but not in the context of Plaintiff's credibility. Further, it appears that the Appeals Council reached the conclusions that (1) Plaintiff did seek some medical treatment, and (2) Plaintiff's failure to seek more aggressive treatment is adequately explained by Plaintiff's lack of health insurance:

> A state agency medical consultant indicated the claimant could perform medium exertional activities despite his chronic pain complaints, particularly considering the fact that the claimant did not take pain medication or seek treatment for pain (Exhibit 7F). We reviewed the record and found that the claimant reported using ibuprofen and a back brace while working (Exhibit 2F). The claimant reported that he no longer had health insurance since the alleged onset date which could provide an explanation why the record does not contain additional treatment records regarding his back pain complaints (Exhibit 14F). Nonetheless, the claimant did receive treatment from Dr. Mochizuki and, in the absence of significant physician findings by either Dr. Mochizuki or Dr. Vesali (Exhibits 2F, 6F, 9F, 14F and 15F), the Council gives great weight to the opinion of the State agency medical consultant (Exhibit 7F).

(AR 6.)

Reading this portion of the Appeals Council's analysis, it appears that the Appeals Council did not cite Plaintiff's failure to seek treatment as a basis to discredit him. On the contrary, the Appeals Council noted that Plaintiff sought treatment from Dr. Mochizuki, took ibuprofen, used a back brace, and any failure to seek further treatment is explained by Plaintiff's lack of health insurance. The record further indicates that Plaintiff received lumbar injections on March 3, 2006, March 23, 2006 and August 28, 2008 (AR 266, 269, 270), a CT scan of his head on December 5, 2007 (AR 268), and MRIs of his spine on March 20, 2001, January 2, 2004 and February 28, 2006 (AR 271, 273, 275). The record does not support the conclusion that Plaintiff failed to seek medical treatment.

The Appeals Council did not rely upon Plaintiff's failure to seek treatment as a ground to discredit him and the Court may not affirm the Appeals Council's actions on grounds that they

did not rely upon. Moreover, the medical record does not support Defendant's argument that Plaintiff failed to seek medical treatment. Accordingly, Defendant's argument does not justify the Appeals Council's adverse credibility determination.

### B. Remand for Further Administrative Proceedings

Plaintiff argues that the Court should remand this action with instructions to immediately award benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)).

Here, even if Plaintiff's subjective testimony were credited as true for purposes of determining Plaintiff's residual functional capacity, there remain outstanding issues that must be resolved before a determination of disability can be made, namely the analysis at step five of the sequential analysis—determining whether Plaintiff is able to do any other work. The administrative record contains no evidence of whether Plaintiff is able to do any other work because the VE did not offer any testimony on the issue. Accordingly, remand is necessary to further develop the record.

### IV.

### CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the Appeals Council erred in their determination that Plaintiff was not credible. The Appeals Council failed to identify clear and convincing reasons to discredit Plaintiff's testimony.

///

The Court rejects Plaintiff's argument that this matter should be remanded with instructions to the Commissioner to immediately award benefits.  The Court finds that remand for further administrative proceedings is necessary to further develop the record and address outstanding issues that must be resolved before a determination of disability can be made.  Specifically, remand is necessary to further develop the record to determine whether Plaintiff is capable of performing other work.

Accordingly, it is HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED in part and DENIED in part.  The Court REMANDS this action back to the Commissioner for further administrative proceedings consistent with this opinion.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Jose Jacinto and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**August 8, 2013**__

UNITED STATES MAGISTRATE JUDGE